On September 9, 1946, the plaintiff, Filmore Pierre, sustained an accidental injury to his left foot while operating a gasoline driven farm machine used to prepare the soil for the building of tung oil sets. His suit is to recover compensation under the State Workmen's Compensation Law, Act 20 of 1914 and its amendments, as for total permanent disability on account of his injury.
In his petition he alleges that he was employed by the Farm Development Corporation, which is domiciled at Hammond, in the Parish of Tangipahoa, and also by James J. LaSalle, a resident of that Parish. He alleges also that the business conducted by the said defendants is a hazardous one and that the duties he had to perform rendered his occupation hazardous. He was receiving wages of $3 per day for a five days week work and therefore claims compensation at the rate of $9.75 per week for 400 weeks and medical expenses not to exceed $500.
There were several defenses presented, the first being that the plaintiff was not engaged in a hazardous occupation as he was a farm hand and therefore was not protected by the provisions of the Workmen's Compensation Act. Act No. 20 of 1914, as amended. A second defense is that plaintiff has completely recovered from the slight injury he suffered and even though he were entitled to recover compensation, he is now in no way disabled and can perform work of a similar character and nature such as he was accustomed to do and was doing before. There seems to have been a further defense injected during the trial of the case, namely, that it had not been shown who was really plaintiff's employer, the Farm Development Corporation, or the individual, James J. LaSalle. This last defense, however, has passed out *Page 155 
of consideration as it was later conceded that the employer was Farm Development Corporation.
The case was tried on these issues in the lower court and resulted in a judgment decreeing that plaintiff was entitled to recover compensation from Farm Development Corporation at the rate of $9.75 per week beginning September 9, 1946, through September 30, 1948, together with 8% per annum interest on each weekly installment until paid. It had been made to appear that the defendant had paid plaintiff $10 per week for eleven weeks following his injury. Whether it was as compensation or not, is not made clear. In his prayer, plaintiff did not ask that the defendants be given credit for that amount and the decree of the lower court is silent as to that. In his reasons for judgment the judge merely stated that the amount had been paid. From the judgment so rendered, plaintiff took this appeal seeking to have the period of disability increased from the one as decreed to 400 weeks as prayed for and also suggesting that the rate of interest decreed in the judgment at 8% be amended to make it correspond to what it should legally be. It is also suggested that the defendant be given credit for the eleven weeks of compensation paid plaintiff immediately following the accident.
The only question which has a serious aspect on the appeal is the one which relates to the extent of plaintiff's disability. In their brief, counsel for defendant make reference to the defense which had been urged on the point that plaintiff, being a farm hand, was not engaged in a hazardous occupation but they seem to have abandoned that also, recognizing the principle, as laid down by decisions of our Supreme Court, that any employee whose duties bring him in contact with motor driven vehicles, whether the principal business of the employer be hazardous or not, within contemplation of the statute, is protected by the provisions of the Workmen's Compensation Law. In this case there is no dispute regarding the fact that the employer used motor driven vehicles in its farming operations; that this plaintiff was engaged as a tractor driver and that at the time he sustained the injury to his foot, he was operating some motor driven contraption which was used to break up the soil and that it was one of the rotating teeth of this machine which drove entirely through the bottom of his foot, coming out through the top and tearing it open.
On the question of the extent and nature of the injury and the disability produced as a result, there is but the testimony of the plaintiff himself who says that since the injury he has not been able to work at all although he tried to do so and had to quit. The only work he does is to piddle around the house and to try to make a garden. The other testimony on this point consists of the reports of two doctors, one an orthopedist by the name of James L. Lenoir and the other a practicing physician by the name of James S. Andres.
Dr. Lenoir appears to have made a very serious and comprehensive examination of the plaintiff on September 25, 1947. His diagnosis was that plaintiff had old compound comminuted fractures of the left tarsus with secondary traumatic arthritis of the tarsus; healed rupture of the left tibialis anticus tendon muscle belly junction and neuroma of the plantar nerves of the left foot. His opinion was that the plaintiff was at that time totally disabled because of the painful arthritis which exists in his left tarsus secondary to the penetrating injury of that foot. He recommended surgical fusion of these painful joints in an effort to eliminate the pain and also that the plantar neuroma be explored and excised at the same time.
Dr. Andres examined the plaintiff on June 2d 1947, and found that plaintiff experienced a slight limp when he walked, favoring his left foot. There was a completely healed scar on the top of the foot and also a healed scar under the foot. X-rays revealed a healed fracture of some of the foot bones which he refers to as the cuboid. His conclusion was that the plaintiff had a usable foot for ordinary farm work and he was of the opinion that the pain plaintiff said he has can be corrected with further treatment. *Page 156 
There is some difference between the reports of these two doctors and we would say that from neither of them would we be able to conclude that this man's foot is in such a condition that it can serve him to the same extent and for the same purpose it did before he was injured. Certainly, according to Dr. Lenoir's report, this man is disabled, apparently from the arthritic changes which have taken place in the nerves at the location of the injury and that this causes him to suffer pain. This diagnosis is certainly supported by the testimony of the plaintiff who says that he suffers such pain as to be unable to work since the injury and that he has to walk on the heel of his foot, not being able to put any weight on his toes. Dr. Andres' report concedes that plaintiff may be suffering pain as he suggests treatment to alleviate it. His report makes no mention about arthritis and therefore we do not know whether he disputes Dr. Lenoir's diagnosis on that point.
Under this testimony therefore, we are unable to make out on what basis the judge of the trial court decreed compensation in favor of plaintiff for a period which figures out to be 107 weeks only. As brought out in brief of counsel for defendant, it may be that he was of the opinion that when he rendered judgment on September 30, 1948, plaintiff was able to return to work. They, of course, contend that the disability had disappeared eleven weeks after the accident when defendant had stopped paying the plaintiff. But certainly that is not supported by the testimony found in the record, no more than is the contention that plaintiff was able to return to work on the day judgment was rendered.
We conclude that this is a case of total permanent disability and accordingly the judgment will be amended by allowing compensation for a period not exceeding 400 weeks. Proper credit of $110 should be allowed and the rate of interest corrected.
For the reasons stated it is ordered that the judgment appealed from be amended by increasing the period of compensation from 107 weeks to a period not exceeding 400 weeks with interest at the rate of 5% on each weekly installment from maturity, and that defendant be given credit for payments in the sum of $110.
As thus amended, the judgment is affirmed at the costs of the defendant appellant.